RECEIVED
APR - 6 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| THOMAS WILSON<br>FED. REG. NO. 24601-056<br>VS. | CIVIL ACTION NO. 08-1961<br>SECTION P<br>JUDGE DRELL |
| WARDEN JOE KEFFER | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

*Pro se* petitioner Thomas Wilson filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2241 on December 15, 2008. Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP). He is incarcerated at the United States Penitentiary, Pollock, Louisiana and he complains that he has been unlawfully denied the right to be placed in a Residential Reentry Center (RRC) for a period of 335-365 days. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

### *Background*

Petitioner is a BOP inmate who is serving an 84 month sentence imposed following a firearms conviction. He claims that he is scheduled for release on October 16, 2009. [rec. doc. 1,

Exhibit B, p. 17]

On August 18, 2008, petitioner's Unit Manager recommended that petitioner receive a 335-365 day RRC placement. [rec. doc. 1, Exhibit A] This recommendation was rejected by Warden Keffer.[1]

On some unspecified date thereafter, the Unit Manager recommended a 180 day RRC placement. This recommendation was also rejected by the Warden who approved instead a 120 day RRC placement. [rec. doc. 1, p. 9]

On October 29, 2008 petitioner submitted an informal Administrative Remedy Program grievance (BP-8) requesting 180 days in "CCC (Halfway House)" for the last 6 months of his incarceration. [rec. doc. 1, Exhibit B, pp. 16-17]

On November 4, 2008 his informal grievance was denied as follows,

> On October 31, 2008, you submitted an Informal Resolution Attempt in reference to you being given consideration for 180 days of Community Correctional Center (CCC) placement.
>
> An investigation into this matter reveals that your assigned Unit Team had recommended you for up to 180 days of CCC placement. After further review of your criminal history records and your institutional adjustment, the FCC Pollock administration decided that

---

[1] According to petitioner, the Warden rejected this recommendation because "... the (BOP) Regional Director has informally communicated his categorical disapproval of any 'penitentiary inmate' receiving more than 180 days in a half-way house, and ... the Warden's apparent belief that ... petitioner was not punished severely enough for his suspected involvement in an incident involving tobacco products (which the Warden and his Associate Warden continue to allude to conversationally whenever consulted about why his Case Manager's recommendations are being oddly batted down.)" [rec. doc. 1, p. 5; see also p. 7]

> 120 days CCC placement is more appropriate in your particular case.
>
> If you are not satisfied with this decision, you may appeal to the Warden on an Administrative Remedy Form BP-229. [rec. doc. 1, Exhibit B, p. 18].

On November 14, 2008 petitioner submitted a formal Request for Administrative Remedy; therein he requested reinstatement of the originally recommended 365 day RRC placement. He also alleged the following as the reason his previous request were denied, "... the (BOP) Regional Director has informally communicated his categorical disapproval of any 'penitentiary inmate' receiving more than 180 days in a half-way house, and ... the Warden's apparent belief that ... petitioner was not punished severely enough for his suspected involvement in an incident involving tobacco products (which the Warden and his Associate Warden continue to allude to conversationally whenever consulted about why his Case Manager's recommendations are being oddly batted down.)" [rec. doc. 1, Exhibit C, pp. 21-22]

On November 26, 2008 his request for 365 day RRC placement was denied by Warden Keffer who noted,

> An investigation into your request found during your most recent Program Review, your Unit Team conducted a Residential Reentry Center (RRC) review following the guidelines of the Second Chance Act of 2007, and recommended a 150-180 day RRC placement. This Act makes it possible, not mandatory, for inmates to be placed in a RRC program for up to 12 months; however, inmates should be individually considered for pre-release RRC placements using the following five-factor criteria: 1) The resources of the facility contemplated; 2) The nature and circumstances of the offense; 3) The history

and characteristics of the prisoner; 4) Any statement by the court that imposed the sentence; 5) Any pertinent statement issued by the U.S. Sentencing Commission. An officer ordered you to release your weapon; however, you fled on foot into the passenger side of a waiting vehicle. Records indicate you were sentenced to an 84 month term of imprisonment on November 2, 2004, and began serving this sentence on November 30, 2004. Your instant offense involved you being convicted of Felon in Possession of a Firearm. During the offense, an officer observed you firing multiple rounds into a crowd of people, striking one person. Moreover, you have prior convictions for Possession of Stolen Goods/Property; Engaging in a Riot (You participated in a riot at the Nash County Jail which resulted in property damages estimated at $8,000); Flee/Eluding arrest With Motor Vehicle; Driving While License Revoked; Reckless Driving; Injury to Personal Property; No Operator's License; Possession With Intent to Sell and Deliver Cocaine; Second Degree Trespass; Accessory After the Fact to Common Law Robbery (You aided and abetted a person in robbing the victim of items valued at $790); and Assault With a Deadly Weapon (You assaulted the victim with a large caliber handgun).

Your institution adjustment is viewed as average. In particular, you have received two incident reports for Codes 397, Phone Abuse-Non Criminal and 206, Making Sexual Proposal/Threat. However, you have completed a total of twenty-two (22) educational/vocational classes during your incarceration. Additionally, you reference an incident regarding the Introduction of Tobacco. You were initially written an incident report for the Introduction of Tobacco; however, the DHO decreased the sanction to Possession of Anything Unauthorized at which time you were assigned twenty hours of extra duty by your Unit Team.

Thus, based on the totality of the above information, you were recommended for a 90-120 day RRC placement. In regards to your allegations of undue bias towards you regarding an incident report for Introduction of Tobacco, you have provided no evidence to substantiate your allegations. [rec. doc. 1, Exhibit C, pp. 19-20]

On December 10, 2008 petitioner submitted a Regional

Administrative Remedy Appeal. Therein petitioner complained that the Warden's determination was made based on invalid rationales as follows: (1) allegations of conduct not charged, admitted to, or proven to a jury; (2) suspected involvement in an incident involving tobacco; and, (3) the Regional Director's disapproval of any penitentiary inmate receiving in excess of 180 days in a half-way house. [rec. doc. 1, Exhibit D, pp. 23-25]

While that matter was pending, on December 15, 2008, petitioner filed the instant petition for *habeas corpus*.

### *Law and Analysis*

#### *1. Proper Remedy*

A federal prisoner may challenge the manner in which his sentence is being executed by filing a petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2241 in the judicial district where he is incarcerated. More specifically, and *apropos* to the instant petition, a prisoner may utilize the provisions of §2241 to challenge the BOP's refusal to authorize his placement in Residential Re-entry Center (RCC), Community Corrections Center (CCC) or halfway house.[2]

---

[2] See the excellent discussion in <u>Mihailovich v. Berkebile</u>, 2007 WL 942091 – an unpublished opinion of the United States District Court for the Northern District of Texas. In that case, a BOP inmate challenged the BOP's denial of placement in a RCC and concluded "... as noted in [<u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (5th Cir. 2005)], confinement in a traditional federal prison is 'qualitatively different' from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC. 432 F.3d at 243-44. In light of [<u>Sonnier v. Francis</u>, 217 Fed. Appx. 410 (5th Cir. 2007)] the other cited cases, the facts of [<u>Carson v. Johnson</u>, 112 F.3d 818 (5th Cir.1997)], and

5

## 2. Exhaustion of Administrative Remedies

However, such prisoners must first exhaust administrative remedies prior to presenting their claims in federal court. See Fuller v. Rich, 11 F.3d 61, 62 (5th Cir.1994). The BOP provides a 3-step administrative procedure for inmates who seek formal review of their complaints. See 28 U.S.C. §§ 542.10-542.19. BOP Program Statement (PS) 1330.13, Administrative Remedy Program, outlines the procedure and provides detailed guidance regarding the procedures to be employed. Prisoners may first "seek informal review of an issue which relates to any aspect of [their] confinement." 28 C.F.R. § 542.10. If unsuccessful, prisoners must thereafter utilize the formal procedures which involve the filing of a BP-9 (to the Warden), BP-10 (to the appropriate BOP Regional Office), and BP-11 (BOP National Inmate Appeals) form. *Id. §§ 542.13*, 542.14, 542.15, 542.18. The BP-11 appeal "is the final administrative appeal." *Id. § 542.15*(a). Only after this three-step review process is completed, can a BOP inmate's claim be considered exhausted.

Only when "...the available administrative remedies ... are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action...", are inmates exempted from

---

petitioner's lack of recourse, the Court finds that petitioner properly invoked jurisdiction under § 2241."

the requirement that they exhaust administrative remedies prior to proceeding with a *habeas* action in court. Fuller, 11 F.3d at 62 (citation omitted). Such exceptions to the exhaustion requirement "apply only in 'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review." *Id.* (citations omitted). Thus, if a BOP inmate demonstrates an applicable exception to the exhaustion requirement, he may obtain a merits ruling on his § 2241 petition despite a lack of exhaustion. See *Id.*

Petitioner implies that exhaustion is futile because "... the very time [he is complaining of being deprived] will have elapsed already by the time [he] accomplish[es] exhaustion." [rec. doc. 1, p. 3]

As shown above, a BOP inmate does not exhaust administrative remedies until such time as he completes the entire 3-step process culminating in the rejection of the BP-11 at the national level. Petitioner's grievance is pending at the Regional level. He claims that further exhaustion would be futile because by the time the administrative remedy process has been completed, his release date will have come and gone. However, this, in and of itself, is not such an extraordinary circumstance to warrant waiver of the exhaustion requirement. The Supreme Court has required even inmates who may be entitled to immediate release to exhaust their administrative remedies. Confronted with the

7

argument "that to require exhaustion of state remedies ... would deprive a ... prisoner of the speedy review of his grievance which is so often essential to any effective redress," the Court acknowledged that "exhaustion of ... remedies takes time" but concluded that "there is no reason to assume that ... prison administrators ... will not act expeditiously." Preiser v. Rodriguez, 411 U.S. 475, 494-95 (1973). In short, petitioner has not shown the extraordinary circumstances necessary to exempt him from the exhaustion requirement.

Further, this is exactly the type of dispute that may best be resolved through the administrative review process. See Parisi v. Davidson, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972), "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence – to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."

Petitioner must exhaust his administrative remedies with respect to this issue; his failure to do so should not be excused.[3]

---

[3] Although the Supreme Court has held that the failure to exhaust administrative remedies must be pleaded as an affirmative defense under the Prison Litigation Reform Act ("PLRA"), see Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007), the PLRA does not apply to federal *habeas* proceedings. Nothing in Jones prohibits the *sua sponte* dismissal of a section 2241 petition on exhaustion grounds.

Further, even in cases governed by Jones and the PLRA, "... a court can

*3. The Merits*

Nevertheless, even if petitioner is exempted from the exhaustion requirement, he is not entitled to relief. In order to state a claim for relief pursuant to 28 U.S.C. §2241, a *habeas corpus* petitioner must allege and ultimately establish that he is in custody in violation of the Constitution and laws of the United States; and, the habeas petitioner has the burden of proof with regard to his claims for relief.

Petitioner complains that the prison administration have not taken seriously the provisions of the Second Chance Act (PL 110-199) and thus deprived him of liberty without due process. As mentioned above, petitioner bases his claim on his belief that the BOP's Regional Administrator "has informally communicated" a policy denying "penitentiary inmates" more than 180 days of half-way house placement, and his belief that the Warden seeks to punish petitioner for an incident involving possession of tobacco products.

However, these claims are conclusory at best and thus insufficient to establish that the decision making process of the prison administration was flawed or otherwise violated the Constitution or laws of the United States.

---

dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust." Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir.2007). Petitioner's complaint and exhibits make it abundantly clear that he did not complete the BOP administrative remedy procedure prior to filing suit.

The Second Chance Act amended 18 U.S.C. §3624(c)(6) and directed the Director of the BOP to issue regulations to

> ... ensure that placement in a community correctional facility by the [BOP] is (A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and, (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community...
> 18 U.S.C. §3624(c)(6).

Title 18 U.S.C. §3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility ... considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence –
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28...

The BOP has promulgated Interim Rules for the implementation of the Second Chance Act of 2007. See 73 Fed. Register 62440-01, 28 CFR Part 570, October 21, 2008. Pursuant to Section 570.22, the interim rules direct that the regulations be implemented to ensure that placements in community confinement are "...

10

Conducted in a manner consistent with 18 U.S.C. §3621(b); Determined on an individual bases; and Long enough 'to provide the greatest likelihood of successful reintegration into the community." The interim regulations further specify that with regard to the determination, the factors outlined in §3621(b) (The resources of the facility; the nature and circumstances of the offense; the history and characteristics of the prisoner, etc.) will be considered.

As shown above, and notwithstanding petitioner's assertion to the contrary, each of those guidelines was considered in making the complained of recommendation. [See rec. doc. 1, Exhibit C, pp. 19-20[4]] In other words, the available evidence establishes that the prison authorities complied with the requirements of 18 U.S.C. §§ 3621 and 3624 in making their recommendation, and thus petitioner, who bears the burden of proof as to this issue, has not established that his custody violates the Constitution or laws of the United States.

Finally with regard to petitioner's assertions that the Regional Director's policy denies "penitentiary inmates" more than 180 day RRC placement; and that the Warden impermissibly

---

[4] The Warden specifically noted the details of the offense of conviction; along with petitioner's past criminal history, and his institutional history. Petitioner objects to the quality of information utilized by the respondent in making his determination; however, he does not show that this information was otherwise unreliable or that the Warden was not permitted by law or regulation from considering the facts as recited in Exhibit C.

11

relied upon the tobacco incident to deny a full year of RCC placement, he offers no evidence to support these conclusory allegations.

Therefore,

**IT IS RECOMMENDED THAT** the Petition for Writ of *Habeas Corpus* be **DENIED** and **DISMISSED WITH PREJUDICE** because petitioner has not shown that he is in custody in violation of the Constitution or laws of the Untied States.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Alexandria, Louisiana, April 6, 2009

12

JAMES D. KIRK
United States Magistrate Judge